# In the United States Court of Federal Claims

No. 09-796C

(Filed: December 3, 2012)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*  \*

| | |
|---|---|
| FLORENTINO L. MATA, | * |
| | * |
| Plaintiff, | * Motion to Dismiss for Lack of |
| | * Subject Matter Jurisdiction; Title |
| v. | * VII Settlement Agreements; Money |
| | * Damages in Event of Breach. |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*  \*

*Lorenzo W. Tijerina,* San Antonio, Texas, for Plaintiff.

*Michael P. Goodman,* with whom were *Stuart F. Delery,* Acting Assistant Attorney General, *Jeanne E. Davidson,* Director, and *Reginald T. Blades, Jr.,* Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for Defendant.

### OPINION AND ORDER ON
### DEFENDANT'S MOTION TO DISMISS

WHEELER, Judge.[1]

In this breach of contract action, Plaintiff Florentino L. Mata alleges that the United States Department of the Army breached a Negotiated Settlement Agreement ("NSA") between the parties. Mr. Mata seeks monetary damages for (1) lost wages, (2) back pay, front pay, and any other compensatory damages, and (3) attorney's fees. The Government filed a motion to dismiss, alleging that this Court does not have jurisdiction to consider Mr. Mata's claims because the settlement agreement does not mandate the payment of money damages. The Court has considered the parties' briefs, and it heard

---

[1] Pursuant to Rule 40.1(c) of the Court, Chief Judge Emily C. Hewitt transferred this case on October 11, 2012 from Judge Lawrence M. Baskir to the undersigned.

oral argument on November 28, 2012.   For the reasons stated below, the Government's motion to dismiss Mr. Mata's complaint for lack of jurisdiction is DENIED.

Background

Mr. Mata is a former employee of the Army, where he worked as an engineer at Fort Sam Houston, Texas.   Beginning in 2006, Mr. Mata alleges that he suffered harassment, discrimination, and reprisal at the hands of his superiors at the U.S. Army South ("USARSO") for having engaged in whistleblowing activity.   From October 2006 through April 2007, Mr. Mata filed four administrative grievances with the Army, as well as an informal complaint before the Army's Equal Employment Office ("EEO").

Eventually, on June 20, 2007, Mr. Mata and the Army's General Command of USARSO entered into a Negotiated Settlement Agreement to address Mr. Mata's workplace complaints relating to Title VII.   Under this agreement, the Army was to "conduct an objective independent review of [Mr. Mata's] 2006 performance evaluation and 11 Aug 06 letter of reprimand within 30 calendar days of the effective date [of] this agreement."   Pl.'s Supp. Br. Ex. 6 at ¶ 3a [hereinafter "NSA"].   The Army was also obligated to "make a good faith attempt to laterally transfer/reassign [Mr. Mata] to an equivalent position for which he is qualified,"   NSA at ¶ 3b, and agreed that "[a]ll actions, complaints, and disciplinary issues concerning [Mr. Mata] prior to the date of this instrument will be null and void," NSA at ¶ 3c.   The NSA further provided that:

> If the Complainant believes that the Army has failed to comply with the terms of [the NSA] . . . the Complainant shall notify the Equal Employment Opportunity Compliance and Complaints Review (EEOCCR) . . . .   The Complainant may request that the terms of the settlement agreement be specifically implemented or, alternatively, the complaint be reinstated for further processing from the point processing ceased under the terms of [the NSA].

NSA at ¶ 5.   On August 30, 2007, Mr. Mata notified the EEOCCR, in writing, of the Army's noncompliance with the above-quoted terms of the NSA.   Pl.'s Supp. Br. Ex. 7.

On November 1, 2007, 134 days after the effective date of the NSA, Colonel Robert A. Casias delivered his independent objective review of Mr. Mata's negative 2006 performance evaluation and the August 11, 2006 letter of reprimand.   Col. Casias found that the 2006 "Needs Improvement" (Level 4) evaluation was not substantiated, and that the Army violated its regulations and also "basic leadership principles" by (1) not formally evaluating Mr. Mata until two years after he began working for USARSO, and (2) not taking management action once the USARSO was aware of this "drop in

performance."[2]  Pl.'s Supp. Br. Ex. 9 at 2-3.  Col. Casias also found that the letter of reprimand was unsubstantiated and untimely.  Id. at 4.  He recommended that Mr. Mata's 2006 rating be changed to "Excellence" (Level 2), the letter of reprimand be removed from Mr. Mata's personnel file, and Mr. Mata "should be laterally transferred or reassigned as quickly as possible."  Id. at 4-5.

After receiving Col. Casias's review, USARSO Chief of Staff Colonel John E. Phelan informed Mr. Mata that (1) the 2006 evaluation would be upgraded from a Level 4 to a Level 3, (2) the letter of reprimand would stand and remain in the personnel files, and (3) there were no vacancies to which Mr. Mata could be laterally transferred.  Compl. Ex. 3.[3]  Pursuant to the NSA, on November 30, 2007, Mr. Mata again informed the EEOCCR of the Army's noncompliance and requested that his complaint be reinstated.  Pl.'s Supp. Br. Ex. 11.  The EEOCCR denied this request, finding that the Army had complied with the terms of the NSA.  Compl. Ex. 5.  Mr. Mata appealed this determination to the EEOC, which affirmed the EEOCCR's finding that the Army had not breached the NSA.  Compl. Ex. 7.  A subsequent request for reconsideration was denied.  Compl. Ex. 9.  Mr. Mata then timely filed a civil action in the United States District Court for the Western District of Texas, where the court dismissed the suit for lack of jurisdiction and transferred Mr. Mata's claims to this Court.  Def.'s Mem. App. at 44, Oct. 27, 2010.

In the meantime, the Army was proceeding with disciplinary action against Mr. Mata.  The Army issued a notice of proposed suspension on September 26, 2007, followed by a notice of decision of suspension for fourteen calendar days, November 5, 2007 through November 18, 2007.  Pl.'s Supp. Br. Exs. 8, 10.  Mr. Mata was again suspended from February 5, 2008 through February 18, 2008.  Id. at Ex. 13.  On March 31, 2008, Mr. Mata was removed from federal service for the cited offenses of "a) failure to follow instructions and b) disrespect."  Id. at Ex. 16.

Mr. Mata seeks monetary damages based on the Army's multiple breaches of the NSA:  (1) failing to follow the recommendations laid out in Col. Casias's review in violation of paragraph 3a; (2) failing to consider Mr. Mata for equivalent positions as required by paragraph 3b; and (3) inappropriately considering a pre-NSA disciplinary issue in the decision to remove him from federal service in violation of paragraph 3c. The Government moves to dismiss for lack of subject matter jurisdiction or alternatively,

---

[2] In arriving at his findings, Col. Casias compared Mr. Mata's previous performance and evaluations with the 2006 evaluation: "Mr. Mata's previous six annual appraisals were rated 'Fully Successful' or 'Highly Successful.'  This drop in performance requires management action per FSH Reg. 690-26; specific guidance was *not followed* when civilian employees receive disciplinary action."  Pl.'s Supp. Br. Ex. 9 at 2 (emphasis in original).

[3] Under the NSA, the Chief of Staff "shall make the final determination regarding the findings of the independent review . . . ."  NSA at ¶ 4a.

failure to state a claim upon which relief can be granted, arguing that the NSA does not mandate the payment of money.

Discussion

I.      Standard of Review

In its motion to dismiss and supplemental briefs, the Government argues that regardless of whether the Army breached the NSA, the agreement is not money-mandating and therefore this Court has no jurisdiction.  Mot. to Dismiss 8.  As jurisdiction is a threshold matter, a "court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits."  Hardie v. United States, 367 F.3d 1288, 1290 (Fed. Cir. 2004) (quoting PIN/NIP, Inc. v. Platte Chem. Co., 304 F.3d 1235, 1241 (Fed. Cir. 2002)).  When considering a motion to dismiss, the Court must presume all undisputed factual allegations to be true and draw all reasonable inferences in favor of the plaintiff.  Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995) (citing, *inter alia*, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982)).  The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.  Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

II.     Jurisdiction Under the Tucker Act

Under the Tucker Act, this Court has jurisdiction "to render judgment upon any claim against the United States founded upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  As a jurisdictional statute only, the Tucker Act "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976).  Therefore, to establish jurisdiction, "a plaintiff must identify a separate source of substantive law" and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages.  Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc).  This other source of law "triggers liability only if it can fairly be interpreted as mandating compensation by the Federal Government."  Holmes v. United States, 657 F.3d 1303, 1309 (Fed. Cir. 2011) (internal citations omitted).  "While the premise to a Tucker Act claim will not be 'lightly inferred,' a fair inference will do."  Id. (quoting United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003)).

Mr. Mata points to the NSA in arguing that the Army's breach resulted in monetary damages.  It is well established that a settlement agreement is a contract.  See, e.g., Lutz v. United States Postal Serv., 485 F.3d 1377, 1381 (Fed. Cir. 2007); Greco v.

Dep't of the Army, 852 F.2d 558, 560 (Fed. Cir. 1988) ("It is axiomatic that a settlement agreement is a contract."). "Where a contract – like a settlement agreement – is breached, the law presumes that a damages remedy will be available." Mastrolia v. United States, 91 Fed. Cl. 369, 380 (2010) (citing Patterson v. United States, 84 Fed. Cl. 583, 584 (2008); Sanders v. United States, 252 F.3d 1329, 1334 (Fed. Cir. 2001)). Under the Tucker Act, monetary damages are the default contract remedy. Id. Here, the parties do not dispute that the NSA is a contract. However, the Government posits that this Court does not have jurisdiction over the breach of contract claim because the NSA cannot be fairly interpreted as money mandating. Mot. to Dismiss 18. In response, Mr. Mata points to the contractual nature of the agreement, arguing that "inherent in every breach of contract is a right to money damages." Pl.'s Resp. 23.

During the course of these proceedings, the Federal Circuit addressed similar arguments in a case also dealing with Title VII settlement agreements, Holmes v. United States, 657 F.3d 1303, 1314 (Fed. Cir. 2011). Given the similarity to the legal and factual issues in Holmes, Judge Baskir stayed this case pending the outcome of the Holmes case on appeal. In its decision, the Federal Circuit explained that "in a contract case, the money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract, with no further inquiry necessary." Id. In explaining this principle, the court noted that "[n]ormally contracts do not contain provisions specifying the basis for the award of damages in case of breach . . . ." Id. (quoting San Juan City Coll. v. United States, 391 F.3d 1357, 1361 (Fed. Cir. 2004)).

The court then evaluated the settlement agreements at issue, finding that they could be fairly interpreted as contemplating monetary damages. Id. at 1315. The agreements required the Navy to expunge the plaintiff's suspension from his record and provide the Marine Index Bureau with a neutral reference for him, the purpose of which "was clearly to prevent Mr. Holmes from being denied future employment based on his record as the Navy maintained it prior to the agreements." Id. at 1316. Although monetary damages were not expressly addressed in the agreement, the court observed that there was "no language in the agreements indicating that the parties did not intend for money damages to be available in the event of breach." Id. Accordingly, the Federal Circuit concluded that "the agreements inherently relate[d] to monetary compensation through relationship to Mr. Holmes's future employment." Id.

In the present case, the parties executed the NSA to settle the multiple administrative grievances filed by Mr. Mata. These grievances detailed harassment, discrimination, and reprisal suffered by Mr. Mata stemming from his previous whistleblowing activity. In his third administrative grievance, Mr. Mata stated that he "fear[ed] for [his] career, all because [he] reported fraud & abuse." Pl.'s Supp. Br. Ex. 4 at 2.

The NSA required the USARSO to conduct an objective independent review of Mr. Mata's 2006 performance evaluation and letter of reprimand.  NSA at ¶ 3a.  The NSA also required the USARSO to "make a good faith attempt to laterally transfer/reassign complainant to an equivalent position for which he is qualified, in a directorate outside of DCSENG but within USARSO."   NSA at ¶ 3b.   Like the agreements in Holmes, therefore, the NSA in this case "contemplates the possibility of plaintiff's future employment."  See Brizuela v. United States, 103 Fed. Cl. 635, 637-38 (2012) (finding that an agreement requiring, *inter alia*, the agency to give plaintiff's reinstatement request "'full, fair, and just consideration' upon the availability of a mail handler position" contemplated "the possibility of plaintiff's future employment" under the Holmes standard), aff'd, No. 2012-5082, 2012 WL 3196031 (Fed. Cir. Aug. 8, 2012).  Accordingly, the NSA can be fairly interpreted as contemplating money damages through a relationship to Mr. Mata's future employment.

Notwithstanding this interpretation, the Government argues that the language of the NSA itself precludes the availability of money damages.  Mot. to Dismiss 13-14, 19.  In its supplemental brief, the Government submits that the parties "did not contemplate money damages as the appropriate remedy in the event of breach."  Def.'s Supp. Br. 6.  Instead, the Government argues that the "remedy agreed upon by the parties" was either for Mr. Mata to notify the EEOC and "request that the terms of the settlement agreement be specifically implemented or, alternatively, the complaint be reinstated . . . ."  Id. at 6 (quoting ¶ 5 of the NSA).  The Government points out that the settlement agreements in Holmes did not contain any such language, and concludes that paragraph five of the NSA establishes that the parties did not intend for money damages to be available in the event of breach.  Id. at 7.

As the Government concedes, however, it argued in Holmes that an EEOC regulation containing essentially the exact same language as the NSA barred the exercise of Tucker Act jurisdiction.[4]   Holmes, 657 F.3d at 1316; Def.'s Supp. Br. 4-5.  The Federal Circuit disagreed, seeing "no reason for § 1614.504(a) to preclude a suit for money damages in the event of breach that is separate from, or in addition to, the relief the regulation provides."  Holmes, 657 F.3d at 1316.  In subsequent cases, this Court has adhered to the Federal Circuit's non-exclusionary view of such relief.  See Emanuele v. United States, No. 11-345C, 2012 WL 3064852, at *2, 6 (Fed. Cl. July 27, 2012) (finding that "under the standards set by the Federal Circuit in Holmes" it had jurisdiction over claims for breach of a settlement agreement that included § 1614.504 in the event of breach); cf. Johnson v. United States, No. 12-18, 2012 WL 4356214, at *1, 8 (Fed. Cl. Sept. 21, 2012) (finding that because the agreement specified that plaintiff may "*only* seek to enforce [the agreement] pursuant to those parts of the [EEOC] regulations which

---

[4] "If the complainant believes that the agency has failed to comply with the terms of a settlement agreement. . . The complainant may request that the terms of [the] settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased."  29 C.F.R. § 1614.504(a) (2006).

address the matter of enforcement[]," the Court did not have jurisdiction) (alteration in original).   Therefore, because the NSA does not contain any language limiting the remedies available to Mr. Mata, the procedural language of the agreement does not preclude this Court from exercising jurisdiction.

Finally, the Government relies on dicta within the Holmes decision discussing a factual scenario similar to the case at bar.  In discussing Title VII settlement agreements broadly, the Federal Circuit "readily accept[ed] that settlement of a Title VII action involving the government *could* involve purely nonmonetary relief – for example, a transfer from one agency office to another."  Holmes, 657 F.3d at 1315 (emphasis added). Contrary to the Government's reading of Holmes, however, the Federal Circuit's acknowledgement of the possibility that a settlement agreement "could involve purely nonmonetary relief" is not dispositive.  Id.  The court went on to explain that because of the possibility that an agreement could involve purely nonmonetary relief, "it was proper for the [lower] court to require a demonstration that the agreements could fairly be interpreted as contemplating money damages in the event of breach."  Id.  The Federal Circuit then proceeded to its analysis and subsequent conclusion that the agreements in Holmes inherently related to monetary compensation through relationship to future employment.

Thus, under Holmes, a settlement agreement that involves, "for example, a transfer from one agency office to another," merely triggers the requirement that "the agreement[] [can] fairly be interpreted as contemplating money damages in the event of breach."  Id.  Here, as discussed above, the Court finds that the NSA can fairly be interpreted as contemplating money damages through the relationship to Mr. Mata's future employment, and thus, this requirement is met.  Accordingly, the Court concludes that it has jurisdiction to consider Mr. Mata's breach of contract claim for monetary damages under the Tucker Act.

   III.    The Government's Litigation Position

This case was transferred to this Court from the U.S. District Court for the Western District of Texas.  The Government triggered the transfer by arguing in the District Court that "exclusive jurisdiction over [this] claim would lie in the Court of Federal Claims."  Def.'s Mem. App. at 2, Oct. 27, 2010 (arguing that the "allegation of breach of the NSA is a straight-forward contract dispute within the meaning of the Tucker Act").  The District Court agreed with the Government in a Magistrate's opinion adopted by the court, observing that "as defendant now concedes, transfer of this case to the Court of Federal Claims, rather than dismissal, is appropriate."  Id. at 41 (D. Ct. Mag. Mem., Aug. 5, 2009, adopted Aug. 20, 2009 (Id. at 44)).  Once the case was transferred to the Court of Federal Claims, the Government reversed course and argued that this Court lacks jurisdiction to hear Mr. Mata's claims.  Although the Government is correct that it "cannot be estopped from asserting lack of subject matter jurisdiction as a defense,"

Def.'s Reply Br. 5 (quoting <u>Synernet Corp. v. United States</u>, 41 Fed. Cl. 375, 383 (1998)), the Court nonetheless finds this whipsaw litigation strategy disturbing.

In the Court's view, the attorneys at the Department of Justice are public servants, and the Government "should avoid taking a litigation position that opens it up to the criticism that it has whipsawed an opponent both because it is unfair to the plaintiff and because it wastes the resources of the plaintiff, the executive branch, and the judiciary." <u>Phillips v. United States</u>, 77 Fed. Cl. 513, 521 (2007) (citing <u>Drury v. United States</u>, 52 Fed. Cl. 402, 406 (2002)).   Regardless of the various attorneys and divisions of the Department of Justice that may have worked on this case during its pendency, the Department of Justice functions as a unified entity for the United States Government.  As such, it is responsible for both the successes and mistakes of those within its employ. Here, the mere fact that representatives of the Government may have disagreed or failed to coordinate as they should in formulating the most effective arguments for dismissal does not permit the Government to whipsaw the plaintiff with inconsistent positions that both prolong resolution and increase expenses.   The Court finds the Government's litigation strategy regarding Mr. Mata's claim less than commendable.  Nonetheless, the Court bases its jurisdictional decision solely on the applicable law, and not on the Government's litigation position.  <u>See</u> <u>Drury</u>, 52 Fed. Cl. at 406.

Conclusion

For the reasons set forth above, the Government's motion to dismiss Mr. Mata's claim for lack of subject matter jurisdiction is DENIED.  The Court requests counsel of record to confer and submit a joint status report on or before December 17, 2012 proposing a schedule that will lead to the trial or other disposition of this case.

IT IS SO ORDERED.

<u>s/ Thomas C. Wheeler</u>
THOMAS C. WHEELER
Judge