# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕱𝖊𝖉𝖊𝖗𝖆𝖑 𝕮𝖑𝖆𝖎𝖒𝖘

No. 09–796C

(E-Filed: February 26, 2014)

| | |
|---|---|
| FLORENTINO L. MATA, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE UNITED STATES, )<br><br>Defendant. ) | Cross-Motions for Summary Judgment, RCFC 56; Breach of Contract; Contract Interpretation; Damages for Breach of Contract; Subject Matter Jurisdiction; Allegations of Fraud and Bad Faith |

<u>Lorenzo W. Tijernia</u>, San Antonio, TX, for plaintiff.

<u>Michael P. Goodman</u>, Trial Attorney, with whom were <u>Stuart F. Delery</u>, Assistant Attorney General, <u>Bryant G. Snee</u>, Acting Director, and <u>Reginald T. Blades</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. <u>Rebecca Ausprung</u>, Chief, Civilian Personnel Branch, United States Army Litigation Division, Fort Belvoir, VA, of counsel.

OPINION and ORDER

CAMPBELL-SMITH, Chief Judge

Florentino L. Mata (plaintiff or Mr. Mata), a former engineer with the United States Army (Army), brings this action against the United States (the government or defendant) alleging that the Army breached the parties' June 20, 2007 Negotiated Settlement Agreement (NSA). See Initial Complaint (Complaint or Compl.), Dkt. No. 7, ¶ 1.[1] Plaintiff contends that "the Army breached several terms and conditions of the NSA . . . causing the Plaintiff substantial monetary damages including but not limited to the Plaintiff losing his job of nineteen (19) years as a Professional Engineer in Federal civilian service." Id.

---

[1] The Initial Complaint (Complaint or Compl.), Dkt. No. 7, consists of twenty-five pages of numbered paragraphs, which the court cites by paragraph number, and eighty-nine pages of attachments. When citing to the attachments, the court cites to the page number generated by the court's Case Management/Electronic Case Files system.

Before the court are Plaintiff's Motion for Summary Judgment, Dkt. No. 50, and Plaintiff's Memorandum of Law and Points of Authority in Support of His Motion for Summary Judgment (plaintiff's Motion or Pl.'s Mot.),[2] Dkt. No. 50–1, filed July 27, 2013; Defendant's Response to Plaintiff's Motion for Summary Judgment, Motion to Dismiss, and Cross-Motion for Summary Judgment (defendant's Motion or Def.'s Mot.), Dkt. No. 53, attached to which is an Appendix (Def.'s App.),[3] Dkt. No. 53–1, filed September 23, 2013; Plaintiff's Reply to the Defendant's Response to Plaintiff's Motion for Summary Judgment and Plaintiff's Response to the Defendant's Motion to Dismiss, and Cross Motion for Summary Judgment (Pl.'s Resp.), Dkt. No. 61, attached to which are several exhibits,[4] Dkt. Nos. 61–1 through 61–5, filed November 16, 2013; and Defendant's Reply in Support of Motion to Dismiss and Cross-Motion for Summary Judgment (Def.'s Resp.), Dkt. No. 63, filed November 27, 2013.  The court also cites to certain exhibits attached to Plaintiff's Supplemental Brief and Response to the Defendant's Supplemental Brief to its Motion to Dismiss (Pl.'s Suppl. Br.), Dkt. No. 38, filed April 23, 2012.

For the reasons set forth below, the court DENIES-IN-PART and STAYS-IN-PART plaintiff's Motion and GRANTS-IN-PART, STAYS-IN-PART, and DENIES-IN-PART as MOOT defendant's Motion.

---

[2]     Plaintiff's Memorandum of Law and Points of Authority in Support of His Motion for Summary Judgment (plaintiff's Motion or Pl.'s Mot.), Dkt. No. 50–1, consists of twenty-eight pages of numbered paragraphs, which the court cites by paragraph number, and nine pages without numbered paragraphs, which the court cites by the page number assigned by plaintiff.

[3]     When citing to defendant's Appendix (Def.'s App.), Dkt. No. 53–1, the court cites to the page number assigned by defendant.

The court notes that defendant's Appendix includes a portion of the Oral Deposition of Lou Ann Reiser that was not attached to the Complaint.  See Def.'s App. A1–A6 (Reiser Dep.).

[4]     The only exhibit attached to Plaintiff's Reply to the Defendant's Response to Plaintiff's Motion for Summary Judgment and Plaintiff's Response to the Defendant's Motion to Dismiss, and Cross Motion for Summary Judgment (Pl.'s Resp.), Dkt. No. 61, to which the court cites is the Affidavit of Florentino L. Mata (Mata Affidavit).  When citing to the Mata Affidavit, the court cites to the exhibit number assigned by plaintiff followed by the relevant paragraph number of the Affidavit.

I.      Background[5]

        A.      The Negotiated Settlement Agreement

        In October 2006, plaintiff filed a whistleblower grievance against his first-line and second-line supervisors, Nicolass DeGreef (Mr. DeGreef) and Michael Swenty (Mr. Swenty), respectively.  Pl.'s Mot. ¶ 1.  Plaintiff subsequently filed three additional administrative grievances alleging that, a result of his whistleblower activity, he was subject to harassment, discrimination, and reprisal by his supervisors at U.S. Army South (USARSO).  See id. ¶¶ 3–4, 6.  In April 2007, plaintiff filed an informal Equal Employment Opportunity (EEO) complaint with the Army's Equal Employment Office alleging the same issues pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  See id. ¶ 5.

        On June 20, 2007, plaintiff and USARSO's Command General entered into the NSA to resolve plaintiff's EEO complaint.  Id. ¶ 7.  The NSA was signed by plaintiff; Colonel Abel Concha (Col. Concha), plaintiff's third-line supervisor and the Deputy Chief of Staff of Engineers; and Bill Reimer, counsel for the Army.  Id.; see Compl. ¶ 37 (identifying Col. Concha's title).

        The dispute before the court centers primarily on the obligations of the Army under paragraph three of the NSA, which states, in relevant part:

        3.      The Agency agrees:

        a.      To conduct an objective independent review of [C]omplainant's 2006 performance evaluation and 11 Aug 06 letter of reprimand within 30 calendar days of the effective date [of] this agreement. . . . During the pendency of the review, the [C]omplainant's 2006 evaluation and reprimand will be withdrawn from his personnel folder and the personnel data base.  If the review results in the upgrading of the performance appraisal, Complainant shall receive any and all awards issued to his counterparts with a similar rating.

        b.      As soon as possible during the 120 calendar day period from the effective date of this agreement with the right of Complainant to request an extension of time from the Chief of Staff, based on good cause due to no openings available during the 120 calendar day period, USARSO shall make a good faith attempt to laterally transfer/reassign [C]omplainant to an equivalent position for which he is qualified, in a directorate outside of [Deputy Chief of Staff, Engineer (DCSENG)] but within USARSO.  USARSO HR shall

---

[5]      Unless otherwise noted, the cited facts in the briefing of only one of the parties do not appear to be in dispute.

forward to Complainant and [the Civilian Personnel Advisory Center (CPAC)] notice of any valid vacancy for which the Complainant could be deemed to be qualified by CPAC.  CPAC will determine if Complainant is qualified for the vacancy and will notify the Chief of Staff of any positions for which he qualifies.  The Chief of Staff will make the final determination as to the acceptability of the recommendation . . . .

c.   <u>All actions, complaints, and disciplinary issues concerning Complainant prior to the date of signing of this instrument will be null and void.</u>

Compl. at 26–29 (NSA) ¶ 3 (emphasis added).  Paragraph 4a of the NSA provides that "the Chief of Staff, USARSO[,] shall make the final determination regarding the findings of the independent review discussed in paragraph 3a," NSA ¶ 4a, and, further to paragraph 3b of the NSA, paragraph 4d provides "that if for budgetary reasons, priority placement obligations, transformation issues, or any other valid cause, the Command has the discretion to not place the Complainant in a position recommended by CPAC," NSA ¶ 4d.

Pursuant to paragraph 3a of the NSA, Colonel Robert Casias (Col. Casias) completed an independent review of plaintiff's 2006 performance evaluation and August 11, 2006 letter of reprimand.  Pl.'s Mot. ¶ 12.  A November 1, 2007 memorandum from Col. Casias to Colonel John Phelan (Col. Phelan), the USARSO Chief of Staff and plaintiff's fourth-line supervisor, details Col. Casias' findings and recommendations. Compl. at 30–34 (Casias Mem.).  Col. Casias found that neither the 2006 performance evaluation, which rated plaintiff at a Level 4 (needs improvement), nor the August 11, 2006 letter of reprimand, were substantiated.  <u>See</u> <u>id.</u> at 31, 33.  Based on these findings, Col. Casias recommended, in relevant part, that plaintiff's 2006 performance evaluation be upgraded from a Level 4 to a Level 2 (excellence), that plaintiff's August 11, 2006 letter of reprimand be removed from his personnel file, and that, further to paragraph 3b of the NSA, plaintiff be "laterally transferred or reassigned as quickly as possible."  <u>Id.</u> at 33–34.

Pursuant to paragraph 3b of the NSA, Sonia Caceres (Ms. Caceres), USARSO HR, sent plaintiff and Lou Ann Reiser (Ms. Reiser), CPAC, an e-mail on October 3, 2007 attaching two lists of all the vacancies "for which [Mr. Mata] could be deemed qualified" as of October 1, 2007.[6]  Def.'s App. A9 (Oct. 3, 2007 e-mail); <u>see id.</u> at A10–A13

---

[6]      The October 3, 2007 e-mail attached two lists of vacancies.  Def.'s App. A9 (Oct. 3, 2007 e-mail).  Both lists were dated October 9, 2007.  <u>See</u> Def.'s App. A10–A13 (vacancy lists) ("Vacancies as of 10/9/2007 11:25 AM").  Because the vacancy lists sent on October 3, 2007 could not encompass vacancies that did not occur until October 9, 2007, the court regards the vacancy lists to be current as of October 1, 2007.  <u>See</u> Def.'s

(vacancy lists).  Ms. Reiser reviewed the lists of vacancies and determined that there were no equivalent engineer positions for which Mr. Mata was qualified.  See Def.'s App. A5–A6 (Reiser Dep. 39:18–40:17, 41:6–14).

On November 9, 2007, Col. Phelan released to plaintiff a memorandum detailing, pursuant to paragraphs 3b and 4a of the NSA, his determinations.  Compl. at 35 (Phelan Mem.).  After considering Col. Casias' review, Col. Phelan intended to upgrade plaintiff's 2006 performance evaluation to a Level 3[7] and to let stand plaintiff's August 11, 2006 letter of reprimand.  Id.  Col. Phelan indicated that he had "met with Ms. Lou Ann Reiser of [CPAC] concerning the search for a valid vacancy for an equivalent engineer position to which [plaintiff] could be laterally transferred . . . as required by [paragraph 3b of the] NSA."  Id.  Because "[n]o unencumbered vacant equivalent engineer position was found," Col. Phelan determined that plaintiff would remain in his current position.  Id.

B.    Plaintiff's Removal from the Army

On September 26, 2007, nearly three months after the NSA at issue in this case had been executed, the Army issued plaintiff a notice of proposed suspension for the offenses of insubordination, delay in carrying out instructions, discourtesy to a supervisor, unexcused tardiness and other attendance issues, and knowingly making false statements—all stemming from events that transpired between August 2007 and September 2007.  Pl.'s Suppl. Br., Ex. 8 at 1–2 (Sept. 26, 2007 Notice of Proposed Suspension).  Subsequently, plaintiff was suspended from work for fourteen days.  Id., Ex. 9 at 1 (Nov. 1, 2007 Notice of Suspension).  On December 13, 2007, the Army issued plaintiff a second notice of proposed suspension for the offense of misconduct stemming from events that transpired in November 2007.  Id., Ex. 12 at 1–2 (Dec. 13, 2007 Notice of Proposed Suspension).  Plaintiff was suspended again from work for fourteen days.  Id., Ex. 13 at 1 (Feb. 4, 2008 Notice of Suspension).

On February 19, 2008, Mr. Swenty sent plaintiff a notice of proposed removal from the Army.  Compl. at 111–13 (Notice of Proposed Removal).  Some of the reasons cited for Mr. Swenty's proposed removal action were plaintiff's two offenses of failing to follow instructions and plaintiff's one offense of exhibiting disrespect, each of which stemmed from events that transpired on January 25, 2008.  Id. at 111.  Mr. Swenty also considered the two fourteen-day suspensions plaintiff served and the Official Written

_____

App. A9 (Oct. 3, 2007 e-mail) (including an attachment titled "vacancy 1 Oct. 07.xls"); Caceres Dep. 8:15–17 (confirming that the vacancy lists were dated October 1).  The court's resolution of this dispute would not change, however, if the lists reflected position vacancies as of October 9, 2007.

[7]    The parties do not provide, and the record does not indicate, the descriptor assigned to a Level 3 performance evaluation.

Reprimand issued to plaintiff on August 11, 2006 "for the offense of inappropriate behavior." Id. at 112.  On March 24, 2008, Col. Concha sent plaintiff a notice of removal from federal service effective March 31, 2008, based on a review of all the available information.  Compl. at 114 (Notice of Removal).

      C.     Relevant Procedural History[8]

On August 30, 2007 and again on November 30, 2007, plaintiff notified the Equal Employment Opportunity Compliance and Complaints Review Directorate (EEOCCR) of the Army's alleged noncompliance with the NSA.  See Pl.'s Suppl. Br., Ex. 7 (Aug. 30, 2007 EEOCCR notification); Compl. at 36–37 (Nov. 30, 2007 EEOCCR notification); cf. NSA ¶ 5 (providing that if plaintiff believed that the Army had violated the terms of the NSA, he should notify the EEOCCR for enforcement or reinstatement).  The EEOCCR found plaintiff's claims to be without merit and denied his request to reinstate his EEO complaint.  Compl. at 48–43 (Dec. 13, 2007 EEOCCR decision).  Plaintiff appealed the decision of the EEOCCR to the Equal Employment Opportunity Commission (EEOC).  See Compl. at 44–47 (EEOC appeal).  The decision of the EEOCCR was affirmed.  Compl. at 48–53 (EEOC decision).  Plaintiff subsequently filed a motion for reconsideration, Compl. at 54–61 (EEOC Mot. for Reconsideration), which the EEOC denied on May 20, 2008, Compl. at 62–64 (EEOC reconsideration decision).

On August 25, 2008, plaintiff filed suit in the United States District Court for the Western District of Texas (district court), claiming, inter alia, that the Army breached the NSA.  See Mata v. Green, No. SA-08-CA-709-OG (W.D. Tex. Aug. 25, 2008), Dkt. No. 1; see also Pl.'s Mot. ¶ 38; Def.'s Mot. 11.  The district court dismissed the action, finding that it lacked jurisdiction to hear plaintiff's claims and transferring the action to this court.  See Order, Mata v. Green, No. SA-08-CA-079-OG (W.D. Tex. Aug. 20, 2009), Dkt. No. 26; see also Def.'s Mot. 11.  On March 5, 2010, plaintiff filed his transfer Complaint in this court.  See Compl. 1.

On October 27, 2010, defendant filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the NSA could not fairly be interpreted as money mandating, as required for this court to possess jurisdiction under the Tucker Act.  Def.'s

---

[8]    The parties' briefing provides a detailed litigation history of plaintiff's challenge to his removal from the Army before the Merit Systems Protection Board, United States District Court for the Western District of Texas, and the United State Court of Appeals for the Fifth Circuit.  See Pl.'s Mot. ¶¶ 38–50; Def.'s Resp. to Pl.'s Mot. for Summary J., Mot. to Dismiss, & Cross-Mot. for Summary J. (Def.'s Mot.), Dkt. No. 53, at 9–11.  Because the litigation history related to plaintiff's removal from federal service is not relevant to the question now before the court regarding whether the Army breached the NSA, the court does not find it necessary to recount that history here.  See infra Part III.C (finding that plaintiff's claims before the court relate only to the Army's alleged breach of the NSA and not to his removal from the Army).

Mot. to Dismiss, Dkt. No. 21, at 5; cf. infra Part II.A (discussing the Tucker Act).  The court stayed the proceedings pending a decision by the United States Court of Appeals for the Federal Circuit (Federal Circuit) in an unrelated, but potentially instructive case, Holmes v. United States, 92 Fed. Cl. 311 (2010), appeal docketed, No. 2010–5119 (Fed. Cir. May 14, 2010).  Order of Jan. 11, 2011, Dkt. No. 28.  On December 3, 2012, following the Federal Circuit's decision in Holmes, 657 F.3d 1301 (Fed. Cir. 2011), this court denied defendant's motion to dismiss.  See Mata v. United States, 107 Fed. Cl. 618, 623–24 (2012).  This court found that because "the NSA in this case contemplates the possibility of plaintiff's future employment[,] . . . the NSA [could] be fairly interpreted as contemplating money damages through a relationship to Mr. Mata's future employment." Id. at 622–23 (internal quotation marks and citations omitted); cf. Holmes, 657 F.3d at 1315–16 (finding that the settlement agreements at issue "inherently relate[d] to monetary compensation through relationship to [the plaintiff's] future employment," and that, therefore, the Court of Federal Claims possessed jurisdiction over the plaintiff's breach of contract claims).

On July 27, 2013, plaintiff moved for summary judgment.  See Pl.'s Mot. 1. Plaintiff argues that the "undisputed facts" demonstrate that the Army breached its obligations under paragraphs 3a, 3b, and 3c of the NSA.[9]  Id. at 33; see Pl.'s Resp. 26 (arguing that the "undisputed facts establish that the Army intentionally breached the NSA to the detriment of the Plaintiff").  Specifically, plaintiff alleges that the Army breached the NSA by not upgrading plaintiff's 2006 performance evaluation to a Level 2, Compl. ¶ 41; see Pl.'s Mot. ¶ 15, by failing to consider plaintiff for any valid vacancy for which he could be deemed qualified, see Pl.'s Mot. ¶¶ 35–36, and by considering the August 6, 2011 letter of reprimand as support for plaintiff's removal from the Army, Pl.'s Resp. 27; see Pl.'s Mot. ¶ 35.

On September 23, 2013, defendant filed its response and cross-motion for summary judgment.  See Def.'s Mot. 1.  Defendant argues that plaintiff cannot establish

_____

[9]      Less than one page of plaintiff's thirty-seven page Motion is devoted to the argument that the Army breached the NSA.  See Pl.'s Mot. 32–33; accord Pl.'s Resp. 26–27.  Accordingly, the court draws from the entirety of plaintiff's Motion to identify all potential support for plaintiff's argument that the Army breached the NSA.

The court notes that plaintiff's Motion is comprised chiefly of a recitation of "undisputed facts," see Pl.'s Mot. ¶¶ 1–50, which, according to defendant, is "replete with argument and conclusory allegations," see Def.'s Mot. 19–20; see also id. at 19 ("The 'undisputed facts' Mr. Mata refers to are not facts at all.  Rather, the majority of Mr. Mata's recitation of facts is simply Mr. Mata's characterization of the evidence in this case.").  Cognizant of the difference between facts and conclusory allegations, the court has reviewed the evidence presented by the parties.  At this stage of the proceedings, the court is focused on identifying the genuine issues of material fact that exist and determining the party in whose favor the undisputed facts weigh.

either that the Army breached the NSA, id. at 19–26, or that he can recover any damages resulting from the alleged breach, id. at 26–28. Defendant adds that the court lacks jurisdiction to hear any claim by plaintiff that relitigates his removal from the Army, id. at 15–16, or that attributes fraudulent conduct to the Army, id. at 28–29.

## II.    Legal Standards

### A.    Subject Matter Jurisdiction

The Tucker Act establishes and limits the jurisdiction of the Court of Federal Claims. See 28 U.S.C. § 1491 (2006). The Tucker Act affords this court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." Id. § 1491(a)(1). Although the Tucker Act waives the sovereign immunity necessary for a plaintiff to sue the United States for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), it does not confer any substantive rights upon a plaintiff, United States v. Testan, 424 U.S. 392, 398 (1976). A plaintiff must establish an independent substantive right to money damages from the United States—that is, a money-mandating source within a contract, regulation, statute or constitutional provision—in order for the case to proceed. See Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

In this case, the court already has found that because "the NSA [could] fairly be interpreted as contemplating money damages through [a] relationship to Mr. Mata's future employment," the court "has jurisdiction to consider Mr. Mata's breach of contract claim for monetary damages under the Tucker Act." Mata, 107 Fed. Cl. at 623–24.

### B.    Cross-Motions for Summary Judgment

The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC).[10] A motion for summary judgment may be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). The moving party has the initial burden of establishing "the absence of any genuine issue of material fact and entitlement to judgment as a matter of law." Crater Corp. v. Lucent Techs., Inc., 255 F.3d 1361, 1366 (Fed. Cir. 2001). "The party opposing the motion must point to an

---

[10]    The Rules of the United States Court of Federal Claims generally mirror the Federal Rules of Civil Procedure (FRCP). See RCFC 56 rules committee note (2008 amendment) ("The language of RCFC 56 has been amended to conform to the general restyling of the FRCP."); C. Sanchez & Son, Inc. v. United States, 6 F.3d 1539, 1541 n.2 (Fed. Cir. 1993) ("The [RCFC] generally follow the [FRCP]. [RCFC] 56(c) is, in pertinent part, identical to [FRCP] 56(c)."). Accordingly, this court relies on cases interpreting FRCP 56 as well as those interpreting RCFC 56.

evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." SRI Int'l v. Matsushita Electric Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985) (en banc); see Grand Acadian, Inc. v. United States, 87 Fed. Cl. 193, 197 (2009) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."). The party opposing the motion must "come forward with relevant, admissible, and specific evidence demonstrating a genuine issue of material fact." Coffee Connections, Inc. v. United States, 113 Fed. Cl. 741, 753 (2012) (citing RCFC 56(e)).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis omitted). A fact is material if it might affect the outcome of the suit, and a dispute over a material fact is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." Id. at 248. An issue is genuine if it might "reasonably be resolved in favor of either party." Id. at 250.

In considering a motion for summary judgment, the court draws all inferences in favor of the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Mann v. United States, 334 F.3d 1048, 1050 (Fed. Cir. 2003). When considering cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

III.   Discussion

    A.    Whether the Army Breached the Negotiated Settlement Agreement

"To recover for breach of contract, a party must allege and establish:  (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." San Carlos Irrigation & Drainage Dist. v. United States (San Carlos), 877 F.2d 957, 959 (Fed. Cir. 1989). The parties do not dispute that the NSA is a valid contract. See Pl.'s Mot. 29–31 (arguing that a contract exists); Def.'s Mot. 21 (conceding that the NSA is a valid contract). The court agrees with defendant that the parties' dispute centers on their competing interpretations of the Army's obligations or duties arising out of the NSA. See Def.'s Mot. 20.

Determining the obligations or duties that arise out of a contract "is a legal question of contract interpretation," San Carlos, 877 F.2d at 959, and contract interpretation is "generally amenable to summary judgment," Varilease Tech. Grp., Inc.

v. United States, 289 F.3d 795, 798 (Fed. Cir. 2002).  "It has been a fundamental precept of common law that the intention of the parties to a contract control[s] its interpretation." Beta Sys., Inc. v. United States (Beta), 838 F.2d 1179, 1185 (Fed. Cir. 1988) (alteration and internal quotation marks omitted).  "'That intention must, in the first instance, be derived from the language of the contract.'"  Nicholson v. United States, 29 Fed. Cl. 180, 194 (1993) (quoting 4 Samuel Williston, A Treatise on the Law of Contracts § 601 (3d ed. 1961)).  Therefore, when interpreting a contract, the court first considers the plain language of the contract.  See Aleman Food Servs., Inc. v. United States, 994 F.2d 819, 822 (Fed. Cir. 1993); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991).  The plain language of the contract "must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances."  TEG-Paradigm Envtl., Inc. v. United States (TEG-Paradigm), 465 F.3d 1329, 1338 (Fed. Cir. 2006) (alteration in original) (internal quotation marks omitted).

When interpreting the plain language of a contract, the "contract must be interpreted when possible as a whole in a manner which gives reasonable meaning to all its parts and avoids conflict or surplusage of its provisions." Granite Constr. Co. v. United States, 962 F.2d 998, 1003 (Fed. Cir. 1992).  Such an interpretation "is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous." NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004); see Gould, 935 F.2d at 1274 ("[A]n interpretation [that] gives a reasonable meaning to all of its parts will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result." (internal quotation marks omitted)).  Contract provisions should not "be construed as being in conflict with another unless no other reasonable interpretation is possible."  United States v. Johnson Controls, Inc., 713 F.2d 1541, 1555 (Fed. Cir. 1983).  To the extent that contract provisions do conflict, "those that relate to a particular matter control over the more general language." Hills Materials Co. v. Rice, 982 F.2d 514, 517 (Fed. Cir. 1992) (citing Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 980 (Ct. Cl. 1965)); see Hometown Fin., Inc. v. United States, 409 F.3d 1360, 1369 (Fed. Cir. 2005) ("Our precedent establishes as a principle of contract interpretation that a specific contract provision will control over a general contract provision.").

The plain language of the contract will be viewed as controlling if it is unambiguous on its face.  Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1040–41 (Fed. Cir. 2003) (en banc); see TEG-Paradigm, 465 F.3d at 1338 ("When the contract's language is unambiguous it must be given its plain and ordinary meaning and the court may not look to extrinsic evidence to interpret its provisions." (internal quotation marks omitted)).  A contract is ambiguous if it is "susceptible to more than one reasonable meaning."  Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375–76 (Fed. Cir. 2004).  The fact that the parties have differing interpretations of a contract provision does not, standing alone, create an ambiguity.  See Cmty. Heating & Plumbing

10

Co. v. Kelso, 987 F.2d 1575, 1578, corrected by 1993 U.S. App. Lexis 31453 (Fed. Cir. 1993); see also Metric Constrs., Inc. v. Nat'l Aeronautics & Space Admin., 169 F.3d 747, 751 (Fed. Cir. 1999) ("To show an ambiguity[,] it is not enough that the parties differ in their respective interpretations of a contract term."). A contract will be considered ambiguous only if "it sustains the interpretations advanced by both parties to the suit." Pacificorp Capital, Inc. v. United States, 25 Cl. Ct. 707, 716 (1992), aff'd per curiam, 988 F.2d 130 (Fed. Cir. 1993) (unpublished table disposition).

If a contract is ambiguous, the court may rely on extrinsic evidence to discern the parties' intent. Tecom, Inc. v. United States, 66 Fed. Cl. 736, 743 (2005); see Metro. Area Transit, Inc. v. United States (Metro.), 463 F.3d 1256, 1260 (Fed. Cir. 2006) ("Having found the contract ambiguous, we may appropriately look to extrinsic evidence to aid in our interpretation of the contract."). However, if the court must weigh extrinsic evidence of the parties' intent to interpret an ambiguous contract, "the matter is not amenable to summary resolution." See Beta, 838 F.2d at 1183; Tecom, Inc., 66 Fed. Cl. at 743 (stating that when a contract is "ambiguous, necessitating a review of extrinsic evidence to determine the parties' intent," summary judgment is not appropriate "if material facts are genuinely in dispute").

If extrinsic evidence does not resolve the ambiguity, the court may then resort to the doctrine of contra proferentem. See Gardiner, Kamya & Assoc., P.C. v. Jackson (Gardiner), 467 F.3d 1348, 1354 (Fed. Cir. 2006) ("When a contract is ambiguous, before resorting to the doctrine of contra proferentem, 'we may appropriately look to extrinsic evidence to aid in our interpretation of the contract.'" (quoting Metro., 463 F.3d at 1260)). "[T]he rule of contra proferentem . . . requires that ambiguous or unclear terms that are subject to more than one reasonable interpretation be construed against the party who drafted the document." Turner Constr. Co. v. United States, 367 F.3d 1319, 1321 (Fed. Cir. 2004); see Chris Berg, Inc. v. United States, 455 F.2d 1037, 1044 (Ct. Cl. 1972). ("[I]f an ambiguity cannot be cleared up by reading the contract as a whole or looking to the circumstances attending the transaction and the conduct of the parties, the ambiguity should be resolved against the party who drafted the contract."). The rule of contra proferentem is considered "a rule of last resort" and "is applied only where there is a genuine ambiguity and where, after examining the entire contract, the relation of the parties and the circumstances under which they executed the contract, the ambiguity remains unresolved." Gardiner, 467 F.3d at 1352 (internal quotation marks omitted); see id. ("[T]he doctrine of contra proferentem is applied only when other approaches to contract interpretation have failed.").

1.    The Army Did Not Breach Paragraph 3a of the Negotiated Settlement Agreement

Plaintiff argues that Col. Phelan breached paragraph 3a of the NSA when he refused to adopt Col. Casias' recommendation that plaintiff's 2006 performance

evaluation be upgraded to a Level 2.  See Pl.'s Mot. ¶ 15 (referring to Col. Phelan's memorandum); Compl. ¶ 41 ("The Army's refusal to make the Plaintiff whole at his annual performance appraisal violates the NSA at ¶ 3a."); cf. Compl. at 35 (Phelan Mem.) (upgrading plaintiff's 2006 performance evaluation to a Level 3 rather than to the recommended Level 2).  However, paragraph 3a of the NSA does not support plaintiff's claim.

Paragraph 3a of the NSA requires the Army "[t]o conduct an objective independent review of [C]omplainant's 2006 performance evaluation . . . within 30 calendar days of the effective date of this agreement."  NSA ¶ 3a.  Paragraph 3a further provides that "[i]f the review results in the upgrading of the performance appraisal, Complainant shall receive any and all awards issued to his counterparts with a similar rating."  Id. (emphasis added).  Paragraph 4a of the NSA provides that "the Chief of Staff, USARSO shall make the final determination regarding the findings of the independent review discussed in paragraph 3a."  Id. ¶ 4a.

As defendant correctly observes, see Def.'s Mot. 22, paragraph 3a of the NSA does not require the USARSO Chief of Staff to adopt the recommendations of the independent reviewer, see NSA ¶ 3a.  Rather, paragraph 3a requires the Army to conduct an independent review of plaintiff's 2006 performance evaluation.  Id.  The record reflects that the Army complied with this provision of the NSA.  See Compl. at 30–34 (Casias Mem.).  Moreover, paragraph 4a of the NSA affords the USARSO Chief of Staff with the authority to make the final determination with regard to the 2006 performance evaluation.  See NSA ¶ 4a.  The court finds that Col. Phelan's decision to upgrade plaintiff's 2006 performance evaluation from a Level 4 to a Level 3 complies with paragraph 4a of the NSA.  The court therefore agrees with defendant that plaintiff has failed to establish that the Army breached the NSA by not upgrading his 2006 performance evaluation to a Level 2.  See Def.'s Mot. 22–23.  Accordingly, the court GRANTS defendant's motion and DENIES plaintiff's motion as to this portion of plaintiff's claim.  See RCFC 56(a).

2.     Whether the Army Breached Paragraph 3b of the Negotiated Settlement Agreement Is Not Amenable to Summary Resolution

Plaintiff next argues that the Army breached paragraph 3b of the NSA by failing to consider him for any valid vacancy for which he could be deemed qualified.  See Pl.'s Mot. ¶¶ 35–36 (claiming that the Army did "not . . . consider Mata for equivalent jobs for which Mata was qualified to do"); Pl.'s Resp. 27 (claiming that "the Army failed to comply with its obligation to notice the Plaintiff of any valid vacancy for which he was qualified").

Paragraph 3b of the NSA provides, in relevant part:

> As soon as possible during the 120 calendar day period from the effective
> date of this agreement with the right of Complainant to request an extension
> of time from the Chief of Staff, based on good cause due to no openings
> available during the 120 calendar day period, USARSO shall make a good
> faith attempt to laterally transfer/reassign [C]omplainant to an equivalent
> position for which he is qualified, in a directorate outside of DCSENG but
> within USARSO.  USARSO HR shall forward to Complainant and CPAC
> notice of any valid vacancy for which the Complainant could be deemed to
> be qualified by CPAC.  CPAC will determine if Complainant is qualified
> for the vacancy and will notify the Chief of Staff of any positions for which
> he qualifies.  The Chief of Staff will make the final determination as to the
> acceptability of the recommendation . . . .

NSA ¶ 3b.

In an e-mail dated October 3, 2007, Ms. Caceres sent plaintiff and Ms. Reiser lists
of all of the Command's vacancies as of October 1, 2007.[11]  Def.'s App. A9 (Oct. 3, 2007
e-mail); Compl. at 65–80 (Caceres Dep.) 13:9–10 ("This is a list of all vacancies . . .
regardless of . . . title . . . that this command had at the time . . . .").  The e-mail
specifically addressed the requirement in paragraph 3b of the NSA that "'USARSO HR
shall forward to Complainant and CPAC notice of any valid vacancy for which
Complainant could be deemed to be qualified by CPAC.'"  Def.'s App. A9 (Oct. 3, 2007
e-mail) (quoting paragraph 3b of the NSA).  Ms. Reiser reviewed the list of vacancies,
and determined that there were no equivalent engineer positions for which Mr. Mata was

---

[11]     Plaintiff contends that "the Army issued the Plaintiff a list of all vacancies for the
month of October 2007 . . . . not just the vacancies for which the Plaintiff was qualified as
mandated [by] ¶3[b] of the NSA."  Pl.'s Resp. 27 (emphasis added).  Paragraph 3b of the
NSA requires USARSO HR to send "Complainant and CPAC notice of any valid
vacancy for which Complainant could be deemed to be qualified by CPAC."  NSA ¶ 3b
(emphasis added).  The court agrees with defendant that, "[b]y the plain language of that
provision, the list of vacancies sent to both CPAC and Mr. Mata is broader than the list of
vacancies that CPAC ultimately determines Mr. Mata is qualified for."  Def.'s Resp. 4;
cf. Caceres Dep. 13:13–15 ("[B]ecause I don't have the knowledge to find out if [Mr.
Mata was] qualified or not, I forwarded [the vacancy list] to CPAC so they could to do
the qualified determination.").  Although, as defendant has observed, "it is difficult to
understand how Mr. Mata could establish any harm from having been provided [with] too
broad a list of vacancies," id., the court does not decide whether plaintiff was harmed.
Rather, the court considers whether the Army breached the NSA.

qualified.[12]  See Def.'s App. A5–A6 (Reiser Dep. 39:18–40:17); cf. Def.'s App. A10 (vacancy list) (listing one engineering vacancy).[13]

In a November 9, 2007 memorandum to plaintiff, Col. Phelan states that he met with Ms. Reiser on November 8, 2007 "concerning the search for a valid vacancy for an equivalent engineer position to which you could be laterally transferred within US Army South but outside the DCSENG, as required by the . . . NSA." Compl. at 35 (Phelan Mem.).  Col. Phelan further states that "[t]he search was from 20 June 2007 until 08 November 2007," and that "[n]o unencumbered vacant equivalent engineer position was found."  Id.

Plaintiff appears to argue that Col. Phelan and Ms. Reiser breached paragraph 3b of the NSA by considering only whether plaintiff was qualified for any equivalent engineer position as opposed to any "equivalent position" as is required by paragraph 3b of the NSA.[14]  See Pl.'s Mot. ¶ 33 (claiming that Ms. Reiser admitted in her deposition testimony "that she intentionally did not comply with [paragraph 3b] of the NSA"); id. ¶

---

[12]     Plaintiff notes that Ms. Reiser "did not provide the Plaintiff with a list of any valid vacancies for which the Plaintiff could be deemed qualified." Pl.'s Mot. ¶ 33.  However, the NSA does not require Ms. Reiser provide such notice to plaintiff; rather, the NSA requires USARSO HR, or Ms. Caceres, to notify plaintiff of any valid vacancies for which he could be qualified.  See NSA ¶ 3b.  The record reflects that Ms. Caceres complied with the terms of the NSA by doing so.  See Def.'s App. A9 (Oct. 3, 2007 e-mail); Caceres Dep. 7:18–21.

[13]     The record reflects that the only engineer position on the list of vacancies reviewed by Ms. Reiser was an "obligated position."  Def.'s App. A10 (vacancy list). That is, it was a position that "was obligated to an individual from . . . the G3 shop" and was therefore "not truly vacant and available."  Def.'s App. A6 (Reiser Dep. 40:16–17); see id. at 40:21 ("[I]t's not a permanent vacancy.").

[14]     Plaintiff also argues that Col. Concha breached paragraph 3b of the NSA "when he intentionally decided not to consider Mata for equivalent jobs for which Mata was qualified."  Pl.'s Mot. ¶ 35.  However, paragraph 3b of the NSA does not obligate Col. Concha, plaintiff's third-line supervisor and the Deputy Chief of Staff of Engineers, to consider whether plaintiff was qualified for an equivalent position.  See NSA ¶ 3b; cf. Pl.'s Mot. ¶ 7 (identifying Col. Concha as plaintiff's third-line supervisor); Compl. ¶ 37 (identifying Col. Concha's title as the Deputy Chief of Staff of Engineers).  Therefore, plaintiff cannot establish that Col. Concha breached paragraph 3b of the NSA.  See San Carlos Irrigation & Drainage Dist. v. United States (San Carlos), 877 F.2d 957, 959 (Fed. Cir. 1989) ("To recover for breach of contract, a party must allege and establish:  (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach.").

36 (claiming that Col. Phelan admitted in his deposition testimony "that he intentionally breached [paragraph 3b] of the NSA, when he intentionally decided not to consider Mata for equivalent jobs for which Mata was qualified"); cf. id. ¶ 35 (relying on the deposition testimony of Col. Concha as additional support for this argument); Pl.'s Resp. 27 (claiming that "[p]laintiff is a Professional Engineer with a Masters Degree in Environmental Studies" and that he "could have been considered for any position in reference to an engineer or a position dealing with environmental issues/studies"). Plaintiff interprets paragraph 3b of the NSA as requiring the Army to consider him for any position at his then grade and step, GS-12, step 1.  See id. ¶ 36.

    The record reflects that both Ms. Reiser and Col. Phelan interpreted the NSA differently.  See Compl. at 81–88 (Reiser Dep.) 41:12–14 ("My understanding was we were looking for equivalent, meaning engineer positions for which he would qualify."), 42:13–15 ("[M]y interpretation of this, equivalent position is based upon the type of work, not the grade level."), 51:3–4 ("Equivalent position meant to me an engineer position."); Compl. at 96–110 (Phelan Dep.) 21:15–17 (Q:  "Is that what the NSA said, that he had to go to an equivalent engineering position?"  A:  "That's my interpretation, yes.").  But, defendant did not address this argument directly in its briefing.[15]  See Def.'s Mot. 24–25.

    Notwithstanding the fact that defendant does not offer any argument to counter plaintiff's interpretation of the NSA, the court considers reasonable the interpretation for which plaintiff advocates as well as the interpretation advanced by Ms. Reiser and Col. Phelan.  Plaintiff is correct that paragraph 3b of the NSA does not specify that the Army could only consider plaintiff for equivalent engineering positions.  See NSA ¶ 3b (stating that "USARSO shall make a good faith attempt to laterally transfer/reassign [C]omplainant to an equivalent position for which he is qualified," and that "CPAC will determine if Complainant is qualified for the vacancy and will notify the Chief of Staff of any position for which he qualifies" (emphasis added)); accord NSA ¶ 4d (stating that plaintiff agreed "[t]o accept assignment to whatever valid, equivalent position the Chief of Staff determines he is qualified for, as recommended by CPAC" (emphasis added)). The plain language of paragraph 3b of the NSA requires that plaintiff be considered for

---

[15]    Defendant argues, and the court agrees, that "the Army did not breach the NSA by failing to transfer Mr. Mata to an equivalent job."  Def.'s Mot. 24 (emphasis and some capitalization omitted).  Paragraph 4d of the NSA provides "that if for budgetary reasons, priority placement obligations, transformation issues, or any other valid cause, the Command has the discretion to not place the Complainant in a position recommended by CPAC."  NSA ¶ 4d.  However, the court understands that the argument raised by plaintiff is not that the Army breached the NSA by failing to "place [Mr. Mata] in a position recommended by CPAC," see id., but, rather, that CPAC—and ultimately the USARSO Chief of Staff—did not consider, in the first instance, whether plaintiff was qualified for an equivalent position.

"an equivalent position" not an equivalent grade, as plaintiff alternatively has urged. NSA ¶ 3b.

When a contract is "susceptible to more than one reasonable meaning," it is ambiguous. Barron Bancshares, Inc., 366 F.3d at 1375–76. When a contract is ambiguous, the court may rely on extrinsic evidence to discern the parties' intent. See Gardiner, 467 F.3d at 1354; Metro., 463 F.3d at 1260; cf. Gardiner, 467 F.3d at 1352, 1354 (stating that the court must first look to extrinsic evidence to resolve contract ambiguities before resorting to the rule of contra proferentem). However, if the court must weigh extrinsic evidence of the parties' intent to interpret an ambiguous contract, "the matter is not amenable to summary resolution." See Beta, 838 F.2d at 1183 ("To the extent that the contract terms are ambiguous, requiring weighing of external evidence, the matter is not amenable to summary resolution."). Because defendant does not address whether the Army breached paragraph 3b by considering only whether plaintiff was qualified for equivalent engineer positions, and because the parties have not presented any extrinsic evidence that offers the court insight as to the parties' intent behind the use of the phrase "equivalent position" in paragraph 3b of the NSA, the court finds that summary resolution of this matter is premature.[16]

The court notes that Col. Phelan's memorandum states that the vacancy search was conducted from June 20, 2007 to November 8, 2007, Compl. at 35 (Phelan Mem.), notwithstanding the fact that Ms. Caceres sent the lists of vacancies to plaintiff and Ms. Reiser on October 3, 2007, Def.'s App. A9 (Oct. 3, 2007 e-mail). The plain language of paragraph 3b of the NSA suggests that Ms. Caceres was obligated to forward to plaintiff and Ms. Reiser—"as soon as possible" after June 20, 2007 but before October 18, 2007—"notice of any valid vacancy for which [Mr. Mata] could be deemed to be qualified by CPAC." NSA ¶ 3b. Neither party addresses, however, whether Ms. Caceres complied

---

[16]   To the extent that extrinsic evidence or the doctrine of contra proferentem ultimately resolves this ambiguity in favor of plaintiff, the court notes that a genuine issue of material fact remains as to whether plaintiff was actually qualified for any vacant equivalent non-engineer positions. Cf. Pl.'s Resp. 27 (stating that "[p]laintiff is a Professional Engineer with a Masters Degree in Environmental Studies," and that he "could have been considered for any position in reference to an engineer or a position dealing with environmental issues/studies"); Compl. at 8186 (Reiser Dep.) 41:18–22 (Q: "As a GS-12 he should be qualified to do something besides engineering . . . ." A: "I don't know.  I'd have to look at his file and see what his other qualifications are."); 43:6–12 (Q: "I spoke to some other personnel people and they said he could qualify as a management analyst.  Would there be any reason for you to doubt that?" A:  "I wouldn't say yes or no without seeing the job description for that management analyst, and then looking at his qualifications."), 45:19–23 (Q:  "What about a civilian military program analyst, wouldn't that be an equivalent position?"  A:  "I have no idea without looking at the job description and his qualifications.").

with the terms of the NSA by providing plaintiff and Ms. Reiser with, as the court understands it, a snapshot of the vacancies available on October 1, 2007, or whether the NSA required Ms. Caceres to have notified plaintiff and Ms. Reiser of vacancies continuously as they opened from June 20, 2007 through October 20, 2007. Cf. Reiser Dep. 51:16–21 (Q: "So really it's just like one month of vacancies, isn't it, from October to November?"   A: "Those vacancies could have been on there month after month, I don't know. As of that date, . . . these were the current vacancies."). This inquiry is relevant because there may have been vacancies for which Mr. Mata could have been deemed qualified by CPAC that either opened after June 20, 2007 but closed before October 1, 2007 or opened between October 1, 2007 and October 18, 2007. See Reiser Dep. 49:14 ("There are jobs posted every day."). Because neither party has briefed the court on the issues of whether Ms. Caceres breached the NSA by providing plaintiff and Ms. Reiser with only a snapshot of the vacancies available on October 1, 2007 and whether plaintiff could have suffered any resulting harm, the court finds that summary resolution of this matter is premature.

The court will hold a telephonic status conference with the parties—to be scheduled after the issuance of this Opinion—to address what further proceedings are necessary to resolve the issue of whether the Army breached paragraph 3b of the NSA. Pending that determination, the parties' cross-motions on the issue of whether defendant breached paragraph 3b of the NSA are STAYED.

3. The Army Did Not Breach Paragraph 3c of the Negotiated Settlement Agreement

Plaintiff further argues that the Army breached Paragraph 3c of the NSA when it relied on the August 6, 2011 letter of reprimand as support for its removal of plaintiff from the Army. Pl.'s Resp. 27; see Pl.'s Mot. ¶ 35 (claiming that Col. Concha considered the August 6, 2006 letter of reprimand in his decision to remove plaintiff from the Army). It is undisputed that one of the reasons for Mr. Swenty's proposed removal of plaintiff from the Army was the issuance to plaintiff of "an Official Written Reprimand on August 11, 2006 . . . for the offense of inappropriate behavior." Compl. at 112 (Notice of Proposed Removal); Compl. at 114 (Notice of Removal Decision) (indicating that Col. Concha considered Mr. Swenty's notice of proposed removal in his decision to remove plaintiff from the Army); see also Pl.'s Mot. ¶ 24; Def.'s Mot. 23. Plaintiff contends that "[t]he use of the August 11, 2006 Official Written Reprimand is a clear violation of the NSA at ¶3c [as] it was specifically cited by the Army to remove the Plaintiff from federal service." Pl.'s Resp. 27. Defendant counters that plaintiff "fails to read the [NSA] as a whole" and that plaintiff's interpretation of the NSA "render[s] paragraph 3a superfluous." Def.'s Resp. 3–4; see also Def.'s Mot. 23 ("In citing to ¶3c alone, Mr. Mata asks this court to ignore the Army's specific obligation with regard to the letter of reprimand set forth in ¶ 3a of the NSA.").

17

Paragraph 3c of the NSA, upon which plaintiff's relies, provides that "[a]ll actions, complaints, and disciplinary issues concerning Complainant prior to the date of signing of this instrument will be null and void." NSA ¶ 3c. Plaintiff contends that the NSA therefore required the Army to render the August 6, 2011 letter of reprimand "'null and void.'" Pl.'s Resp. 26 (quoting NSA ¶ 3c).

Paragraph 3a of the NSA, upon which defendant relies, requires the Army "[t]o conduct an objective independent review of [Mr. Mata's] 2006 performance evaluation and 11 Aug 06 letter of reprimand" and to remove both documents from plaintiff's personnel folder and database "[d]uring the pendency of the review." NSA ¶ 3a. Moreover, paragraph 4a requires the USARSO Chief of Staff to "make the final determination regarding the findings of the independent review discussed in paragraph 3a." NSA ¶ 4a; see Def.'s Mot. 23 (arguing that paragraph 4a of the NSA "specifically gives COL Phelan the discretion to make a final determination as to the findings of the independent review of the [August 6, 2011] letter of reprimand"). Defendant contends that the NSA only required the Army to remove "the [August 6, 2011 letter of] reprimand from [plaintiff's] personnel folder and personnel database during the pendency of the [independent] review." Def.'s Mot. 23 (emphasis omitted). The court finds that only defendant's reading of the NSA is reasonable.

The court reads paragraph 3c as requiring the Army to render null and void "[a]ll actions, complaints, and disciplinary issues concerning [Mr. Mata] prior to the date of signing of this instrument"—with the exception of those specifically referred to in paragraph 3a: plaintiff's 2006 performance evaluation and, relevant here, the August 6, 2011 letter of reprimand. See NSA ¶ 3c. Plaintiff's reading of paragraph 3c—that the Army was obligated to render the August 6, 2011 letter of reprimand "null and void," Pl.'s Resp. 26—leaves the portions of paragraphs 3a and 4a dealing with the August 11, 2006 letter of reprimand alternately, "useless, inexplicable, void or superfluous." See NVT Techs., Inc., 370 F.3d at 1159. By contrast, the court's reading of the NSA "gives reasonable meaning to all of its parts." See Granite Constr. Co., 962 F.2d at 1003. Moreover, to the extent that paragraphs 3a and 3c could be construed as conflicting,[17] cf.

_____

[17]     Plaintiff argues that "[a]ny and all contradictions within the NSA were created the Army's civilian and military lawyers and not the Plaintiff." Pl.'s Resp. 26; see id. (stating that "the Army's civilian and military lawyers drafted and presented [the NSA] to the Plaintiff, a non-lawyer"); Pl.'s Mot. ¶ 7 ("The Army was the party that suggested and authored the NSA."). The court understands plaintiff to be invoking the doctrine of contra proferentem. See supra Part III.A.1 (discussing the rule of contra proferentem). The doctrine of contra proferentem is not applicable here, however, because the court does not consider this portion of the NSA to be ambiguous. Cf. Gardiner, Kamya & Assocs., P.C. v. Jackson, 467 F.3d 1348, 1352 (Fed. Cir. 2006) (stating that courts should apply the doctrine of contra proferentem "only where there is a genuine ambiguity" (internal quotation marks omitted)). The court finds the NSA susceptible to only one

Johnson Controls, Inc., 713 F.2d at1555 (stating that contract provisions should not "be construed as being in conflict with another unless no other reasonable interpretation is possible"), the court's reading of the NSA ensures that the more specific provision, paragraph 3a, controls over the more general provision, paragraph 3c, see Hometown Fin., Inc., 409 F.3d at 1369.

The court finds that the plain language of the NSA, when read as a whole, obligated the Army to remove the August 6, 2011 letter of reprimand from plaintiff's personnel folder and database only during the pendency of the independent review. Plaintiff does not contend, and the record does not reflect, that the Army failed to remove the August 6, 2011 letter of reprimand from plaintiff's personnel folder and database during the pendency of Col. Casias' review.  The court therefore finds that the Army did not breach paragraph 3c of the NSA, and the court GRANTS defendant's motion and DENIES plaintiff's motion as to this portion of plaintiff's claim.  See RCFC 56(a).[18]

> B.  Whether Plaintiff Can Recover Damages Cannot Be Decided Now by Summary Disposition

Defendant argues, in the alternative, that "[e]ven if Mr. Mata could establish that the Army breached the NSA, . . . Mr. Mata still cannot demonstrate all of the elements necessary for him to recover damages."  Def.'s Mot. 26.  "Damages for a breach of contract are recoverable where:  (1) the damages were reasonably foreseeable by the

---

reasonable interpretation.  Cf. Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375–76 (Fed. Cir. 2004) (A contract is ambiguous if it is "susceptible to more than one reasonable meaning.").  Accordingly, the plain language of the contract controls, see Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1040–41 (Fed. Cir. 2003) (en banc), and the court finds inapposite plaintiff's reliance on the doctrine of contra proferentem.

[18]  As noted by defendant, "Mr. Mata also appears to allege that the Army breached ¶ 3c of the NSA by suspending him for 14 days in November 2007 and again in February 28."  Def.'s Mot. 25 (citing Compl. ¶ 27); see Compl. ¶ 27 (claiming that plaintiff's first-line supervisor "testified that he proposed to suspend the Plaintiff twice for fourteen (14) days and that [he] included the . . . August 11, 2006 [letter of reprimand] in violation of ¶ 3c of the NSA").  To the extent that plaintiff advances this argument, the court agrees with defendant that plaintiff "cannot demonstrate that, by suspending him for misconduct that occurred after the execution of the NSA, the Army breached a provision of the NSA that only provided that disciplinary issues prior to the signing of the NSA were null and void."  Def.'s Mot. 26; see NSA ¶ 3c (requiring the Army to render "null and void" "[a]ll actions, complaints, and disciplinary issues concerning Complainant prior to the date of signing of this instrument" (emphasis added)).

breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty." Ind. Mich. Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005). Defendant contends that plaintiff cannot establish that the damages he seeks either were caused by the Army's alleged breach of the NSA or were reasonably foreseeable to the Army. Def.'s Mot. 26. Plaintiff does not address defendant's arguments. Cf. Def.'s Resp. 5 ("Mr. Mata has not presented any facts related to his burden . . . .").

In the Complaint, plaintiff requests monetary damages for lost wages; "any and all equitable . . . relief, including reinstatement and promotion;"[19] back pay, front pay and other compensatory damages; and attorney's fees. Compl. ¶ 54. In his Motion, plaintiff requests additional monetary damages for litigation costs; costs related to lost annual and sick leave; and costs related to maintaining an apartment in Laredo and Temple, Texas— where he currently works as an engineer with the U.S. Department of Veterans' Affairs (VA)—and weekly travel "to care and maintain his homestead in San Antonio."[20] Pl.'s Mot. 34–35.

_____

[19]    To the extent that plaintiff formerly requested "reinstatement and promotion," Compl. ¶ 54b; see Pl.'s Mot. 34, plaintiff now appears to have abandoned this claim, see Pl.'s Resp. 25 ("Plaintiff is not interested in being placed back at his engineering position with the Army."); Pl.'s Resp. Ex. 2 ¶ 7 (Mata Affidavit) ("I do not want or require my job back with the Army.").

[20]    Plaintiff also seeks money damages for his "emotional [and] mental stress." Pl.'s Mot. 35 (capitalization omitted). Plaintiff's demand, which sounds in tort, is beyond the jurisdiction of this court. See Mastrolia v. United States, 91 Fed. Cl. 369, 381 (2010) ("[C]laims for pain and suffering, emotional distress, and mental anguish sound in tort. As such, this Court lacks jurisdiction to award damages for pain and suffering and emotional distress." (internal quotation marks omitted)); Pratt v. United States, 50 Fed. Cl. 469, 482 (2001) ("The court lacks jurisdiction to award plaintiff's prayer for damages for emotional distress and pain and suffering. Except in limited circumstances related to common carriers and innkeepers not applicable here, the court cannot award damages for the emotional consequences of a breach of contract because such consequences are speculative as a matter of law.").

In addition, plaintiff asks for certain "collateral damages." Pl.'s Mot. 34. Specifically, plaintiff requests that the court direct the Army to "restore Mata's retirement account with no break in sevice[,] . . . reimburs[e] his thrift savings plan for the money he lost due to the Army's breach of the NSA," id., and "correct Mata's personnel records so as not to reflect that Mata was removed and had a break in service," id. at 35. Plaintiff relies on 28 U.S.C. § 1492(a)(2) as support for the "collateral damages" he desires. Id. at 34.

As support for its argument that plaintiff cannot establish causality, defendant points to Zulueta v. United States, 2013 WL 363389 (Fed. Cl. Jan. 29, 2013), aff'd, 2014 WL 114201 (Fed. Cir. Jan. 14, 2014); cf. Ind. Mich. Power Co., 422 F.3d at 1373 (providing that, in order for a party to recover damages for a breach of contract, the breach must be "a substantial causal factor in the damages"). Similar to the facts in this case, the plaintiff in Zulueta alleged that the government breached a settlement agreement into which the parties had entered to resolve an EEO complaint filed by the plaintiff. Id. at *1. Relying in part on Holmes, 657 F.3d at 1312–15, the court first found that the settlement agreement was money-mandating and thus the court possessed jurisdiction to hear plaintiff's claims for reinstatement, money damages, and back pay. See Zulueta, 2013 WL at *5–*7; cf. supra Part I.C (discussing Holmes). The court also found that plaintiff failed to show that the damages she sought arose from the government's alleged breach of the settlement agreement. Zulueta, 2013 WL at *7. The court found, instead, that the damages were "relate[d] not to the breach of the Settlement Agreement, but rather to the subsequent action[] of the [government] in relieving [plaintiff] of her position." Id.; see id. at *2 (noting that, approximately two months after entering the settlement agreement, the plaintiff was removed from federal service due to her "inability to perform the requirements of her position"). The court therefore granted defendant's motion to dismiss for failure to state a claim upon which relief could be granted. Id. at *8.

Noting a similarity to the Zulueta case, defendant contends that "all of the alleged damages in Mr. Mata's complaint and motion relate not to the alleged breach of the settlement agreement, but to his subsequent removal." Def.'s Mot. 28; see id. at 27 ("All of Mr. Mata's 'damages' are a proximate cause of his removal from federal service, which occurred as a result of his misconduct committed after the execution of the NSA."); cf. Compl. ¶ 1 (claiming that the Army's alleged breach of the NSA "caus[ed] the Plaintiff substantial monetary damages including but not limited to the Plaintiff losing

---

Title 28 U.S.C. § 1492(a)(2) provides that, "[t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." 28 U.S.C. § 1492(a)(2). To the extent that plaintiff's request for "collateral damages" sounds in equity, Compl. ¶ 54e (requesting "any and all remedies at law and in equity found to be just and owing"); see also Pl.'s Resp. 25, this court may only grant equitable relief if it is "an incident of and collateral to" a money judgment, 28 U.S.C. § 1492(a)(2). That is, the court "has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998) (quoting Austin v. United States, 206 Ct. Cl. 719, 723 (1975)). Given that the court has not yet rendered a money judgment in plaintiff's favor, the court declines further to address plaintiff's request for equitable relief at this juncture.

his job of nineteen (19) years as a Professional Engineer in Federal civilian service");
Pl.'s Mot. 33 (arguing that "the Army utilized its breach to remove Mata from his federal
career"), 36 (arguing that the Army's alleged breach of the NSA caused plaintiff "to be
removed from his federal career").

Defendant next argues that "Mr. Mata cannot demonstrate that the Army could
have reasonably foreseen that he would commit multiple acts of misconduct after the
execution of the NSA that would result in two [fourteen]-day suspensions and his
ultimate removal from Army employment." Def.'s Mot. 28; cf. Ind. Mich. Power Co.,
422 F.3d at 1373 (providing that, in order for a party to recover damages for a breach of
contract, the damages must be "reasonably foreseeable by the breaching party at the time
of contracting"). Defendant adds that plaintiff cannot "demonstrate that it was
reasonably foreseeable that he would obtain employment at another Federal agency, or
that doing so would supposedly require him to pay for two homes." Def.'s Mot. 28.

The court finds defendant's arguments on this issue to be persuasive. But because
plaintiff has not addressed them in his briefing, the court finds that the issue of whether
plaintiff can recover damages for the Army's alleged breach of paragraph 3b of the NSA
is not currently amenable to summary resolution. See RCFC 56(e) (providing that "[i]f a
party . . . fails to properly address another party's assertion of fact as required by RCFC
56(c), the court may . . . give an opportunity to properly support or address the fact").
The court will schedule a telephonic status conference with the parties to address what, if
any, additional proceedings are necessary to resolve this issue. Pending that
determination, defendant's motion on this issue is STAYED.

C.     The Court Does Not Construe Plaintiff's Claims as a Challenge to His
       Removal from the Army

Defendant construes plaintiff's claims in the Complaint and pending Motion to be
"attempt[s] to re-litigate his termination from Army employment." Def.'s Mot. 15.
Defendant contends that "[a]lthough Mr. Mata initially couched his complaint in this
Court as a separate cause of action for breach of an NSA that pre-dated his termination, it
is now apparent that Mr. Mata has no argument that does not relate to his removal." Id.
at 16; see Def.'s Resp. 1 (claiming that "the damages [plaintiff] seeks are directly related
to his having lost his job"). Defendant asserts that the court is without subject matter
jurisdiction to hear plaintiff's "claim directly challenging his termination." Def.'s Mot.
15; see id. at 16 (arguing that plaintiff's "claim[,] as he currently presents it, is not within
this Court's jurisdiction").

It appears to the court, however, from the Complaint and plaintiff's Motion, that
the basis for plaintiff's action currently before the court is defendant's alleged breach of
the NSA. See, e.g., Compl. ¶¶ 1, 3, 33, 40; Pl.'s Mot. 32–33. Plaintiff insists that his

claims are "grounded on the Army's breach of the NSA."[21]  Pl.'s Resp. 25; see Pl.'s Resp. Ex. 2 ¶¶ 5, 8 (Mata Affidavit) (stating that he is "before the U.S. Court of Federal Claims . . . due to the Army's breach of the NSA" and that his claim before court is "not due to the discriminatory treatment [he] suffered at the hands of [his] supervisors and managers" ).  But even if plaintiff were to mount a challenge to his removal from the Army either in the Complaint or his Motion, the court finds that his subsequent denial operates as an abandonment of such claim.  See Lone Star Indus., Inc. v. United States, 109 Fed. Cl. 746, 752 n.4 (finding that plaintiff's concession "that it [was] not pursuing a cause of action separate from its takings claim" amounted to an abandonment of any promissory estoppel claim that plaintiff had previously raised).  Accordingly, the court need not address further defendant's argument that the court lacks jurisdiction over any claim by plaintiff challenging his removal from the Army.[22]  The court DENIES this portion of defendant's Motion as MOOT.

D.    The Court Does Not Possess Jurisdiction to Consider Plaintiff's Allegation of Fraud, and the Court Cannot Address Plaintiff's Allegation of Bad Faith Now as It Is Not Ripe

In Count II of plaintiff's Complaint, plaintiff contends that "the Army intentionally committed fraud when it represented to the EEOC [Office of Federal Operations] that the Defendant had complied with the NSA."  Compl. ¶ 49 (emphasis omitted).  Defendant contends that the court is without jurisdiction to consider plaintiff's claim that the Army committed fraud "because it is well established that fraud is a tort and this Court does not possess jurisdiction over tort actions."  Def.'s Mot. 29.  Plaintiff asserts in its response that the Complaint "specifically alleges that the Army exercised

---

[21]    In his Response, plaintiff twice mischaracterizes defendant's jurisdictional argument.  Plaintiff first contends that defendant "has raised this identical issue before," and that the court has already determined that it possesses jurisdiction over plaintiff's claim that the Army breached the NSA.  Pl.'s Resp. 25; cf. Mata v. United States, 107 Fed. Cl. 618, 623–24 (2012).  Plaintiff next contends that defendant's assertion that the "complaint is grounded on issues of discrimination is disingenuous."  Pl.'s Resp. 25.  But defendant has not argued either that the court lacks jurisdiction over plaintiff's claim that the Army breached the NSA, see Def.'s Mot. 16 (conceding that this court has jurisdiction over plaintiff's claim that the Army breached the NSA), or that the Complaint "is grounded on issues of discrimination," see Def.'s Resp. 2 n.1.  Rather, defendant maintains that this court has no jurisdiction to hear plaintiff "re-litigate his removal from the Army."  Def.'s Resp. 2.

[22]    Nor does the court find it necessary to address defendant's argument that any attempt by plaintiff "to relitigate his termination from the Army is barred by the doctrine of res judicata and collateral estoppel."  See Def.'s Mot. 16 (emphasis and some capitalization omitted).

bad faith when it intentionally failed to comply with the NSA's specifically expressed language."  Pl.'s Resp. 28; <u>see</u> Compl. ¶ 40 (claiming that the Army "acted in bad faith by intentionally failing to comply with its bargained for obligations pursuant to ¶¶ 3a, b and c of the NSA" (emphasis omitted)).

Plaintiff's allegation of fraud sounds in tort, and this court has no jurisdiction over claims that sound in tort.  <u>Skillo v. United States</u>, 68 Fed. Cl. 734, 742 (2005); <u>see</u> 28 U.S.C. § 1491(a)(1) (describing the court's jurisdiction as including certain types of cases "not sounding in tort"); <u>Brown v. United States</u>, 105 F.3d 621, 623 (1997) (finding that the plaintiffs' complaints were "grounded upon fraud, which is a tort" and that, therefore, "the court lack[ed] jurisdiction over those claims").  Accordingly, Count II of plaintiff's Complaint is DISMISSED on jurisdictional grounds.  <u>See</u> RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

With respect to plaintiff's bad faith allegation, the court finds it premature to address whether "the Army exercised bad faith when it intentionally failed to comply with the NSA[]," <u>see</u> Compl. ¶ 40, before the additional briefing on the issue of whether the Army breached paragraph 3b of the NSA is received, <u>see</u> <u>supra</u> Part III.A.2.  Accordingly, the court STAYS plaintiff's claim of bad faith.[23]

IV.   Conclusion

Further to the foregoing, plaintiff's Motion is DENIED-IN-PART and STAYED-IN-PART, and defendant's Motion is GRANTED-IN-PART, STAYED-IN-PART, and DENIED-IN-PART as MOOT.  Plaintiff's Motion is DENIED and defendant's Motion is GRANTED as to plaintiff's claims that the Army breached paragraphs 3a and 3c of the NSA, <u>see</u> <u>supra</u> Parts III.A.1, 3, and their Motions are STAYED as to plaintiff's claim that the Army breached paragraph 3b of the NSA, <u>see</u> <u>supra</u> Part III.A.2.  Defendant's

---

[23]    The court observes that plaintiff's burden of proof on this issue is a heavy one. For plaintiff to succeed on a claim of bad faith on the part of the Army, he must overcome the presumption "that government officials . . . discharge their duties in good faith."  <u>Road & Highway Builders, LLC v. United States</u>, 702 F.3d 1365, 1368 (Fed. Cir. 2012).  The presumption of good faith "is valid and binding unless well-nigh irrefragable proof is offered to rebut or overcome it."  <u>McEachern v. Office of Pers. Mgmt</u>, 776 F.2d 1539, 1545 (Fed. Cir. 1985) (internal quotation marks omitted); <u>see</u> <u>Galen Med. Assocs., Inc. v. United States</u> (<u>Galen</u>), 369 F.3d 1324, 1330 (Fed. Cir. 2004) (stating that when a party "alleges bad faith, in order to overcome the presumption of good faith on behalf of the government, the proof must be almost irrefragable" (alterations and internal quotation marks omitted)).  "[T]he necessary irrefragable proof has been equated with evidence of some specific intent to injure the plaintiff."  <u>Galen</u>, 369 F.3d at 1330 (internal quotation marks omitted).

Motion as to whether plaintiff can recover damages is also STAYED.  See supra Part III.B.

Further, because the court finds that the basis for plaintiff's action before the court is defendant's alleged breach of the NSA, the court deems it unnecessary to address defendant's argument that the court lacks jurisdiction over any attempt by plaintiff to challenge his removal from the Army, and this portion of defendant's Motion is DENIED as MOOT.  See supra Part III.C.  The court also DISMISSES plaintiff's allegation of fraud as outside the court's jurisdiction, and finds it premature to address plaintiff's allegation of bad faith.  See supra Part III.D.  Thus, plaintiff's bad faith claim is STAYED.

The court will contact the parties to arrange a telephonic status conference to address further proceedings in this matter.

IT IS SO ORDERED.

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Chief Judge
